UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

ELLIOT M. HIRSCH,

                    Plaintiff,

             -against-

ELIZABETH M. KAIREY and JAY R.
BUTTERMAN,

                  Defendants.

------------------------------------x

ELLIOT M. HIRSCH,

                    Plaintiff,

             -against-

JAY R. BUTTERMAN and ELIZABETH M.
KAIREY,

                  Defendants.

------------------------------------x

ELLIOT M. HIRSCH,

                    Plaintiff,

             -against-

JAY R. BUTTERMAN,

                  Defendant.

------------------------------------x

**MEMORANDUM & ORDER**
22-CV-5064(EK)(VMS)

22-CV-5925(EK)(VMS)

22-CV-5815(EK)(VMS)

```
------------------------------------x
```

ELLIOT M. HIRSCH,

                  Plaintiff,

                              22-CV-7167(EK)(VMS)

            -against-

JAY R. BUTTERMAN,

                  Defendant.

```
------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff Elliot Hirsch brings these four actions *pro se* and *in forma pauperis.* He invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 for all four actions, which are defined in the margin as *Hirsch I* through *Hirsch IV*.[1] Taken together, he asserts various state-law claims, including intentional infliction of emotional distress ("IIED"), defamation, abuse of process, and civil conspiracy, against defendants Elizabeth Kairey (his estranged wife) and Jay Butterman (her divorce attorney). As with numerous other actions Hirsch has filed in federal court, his claims arise out

---

    [1] Hirsch's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 in *Hirsch v. Butterman*, No. 22-CV-5064 ("*Hirsch I*"), ECF No. 2, is granted. *Hirsch v. Butterman*, No. 22-CV-5925 ("*Hirsch II*"); *Hirsch v. Butterman*, No. 22-CV-5815 ("*Hirsch III*"); and *Hirsch v. Butterman*, No. 22-CV-7167 ("*Hirsch IV*") were transferred to this Court from the United States District Court for the Southern District of New York. The Southern District granted Hirsch's request for *in forma pauperis* status in *Hirsch II* and *Hirsch IV*, but not *Hirsch III*, before transfer. The Court likewise grants the request, ECF No. 1, in *Hirsch III*.

of matters he is litigating in New York State Supreme Court, Kings County.

The Court consolidates these four actions solely for purposes of this Order.  For the reasons that follow, the complaints in *Hirsch II*, *Hirsch III*, and *Hirsch IV* are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915.  The IIED and civil conspiracy claims in *Hirsch I* are likewise dismissed, but that case will proceed as to the abuse of process claim against defendant Butterman.

## I.   Background

In each case, Hirsch seeks relief for alleged harms arising from Kairey and Butterman's actions in relation to matters proceeding in the Kings County Supreme Court.  Two of these cases relate directly to the divorce proceedings between Hirsch and Kairey in that court.  *See Hirsch v. Kairey*, Index No. 53206/2018 (the "Divorce Action").  The other two relate to a separate suit brought by Hirsch in the Kings County Supreme Court against Kairey and another defendant.  *See Hirsch v. Wahba*, Index No. 514979/2021 (the "*Wahba* Action").[2]  The four federal complaints conform to a general pattern: one or both

---

[2] Hirsch asserts that the *Wahba* Action, in which Kairey is also a defendant, "has absolutely nothing to do with [the] divorce action."  *Hirsch IV* Compl. ¶ 10, ECF No. 2.

defendants do or say something in connection with a state court proceeding, and Hirsch files a federal lawsuit in response.

The following allegations, which are assumed to be true, are taken from the operative complaint in each case and any exhibits attached thereto. The Court also considers certain documents incorporated in the complaints by reference and takes judicial notice of certain filings in the relevant state court proceedings. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).

A.  *Hirsch I*

In his amended complaint in *Hirsch I*, Hirsch alleges that Butterman is refusing to permit Kairey to settle the Divorce Action despite her stated desire to do so. *Hirsch I* Am. Compl. ¶¶ 9-24, ECF No. 6. Hirsch claims knowledge of Butterman's actions based on Hirsch's personal interactions with Kairey over a three-day period in late August 2022. *Id.*

Specifically, Hirsch alleges that Kairey offered to settle the Divorce Action, including custody issues, if Hirsch withdrew certain (unspecified) claims he had filed against her in other lawsuits (among other conditions). *Id.* ¶ 9. When Hirsch agreed, Kairey emailed Butterman to convey her desire to settle. *Id.* Several hours later, Butterman called Kairey — who permitted Hirsch to listen in on their phone conversation — and "started screaming at" her, calling her a "horrible person and a

4

sell-out." *Id.* ¶¶ 10–12.  Butterman told her that he

"absolutely refuse[d] to settle the matter," and that Kairey

would have to find another attorney to help her do so.  *Id.*

¶¶ 12, 14.  If she did settle the matter, however, Butterman

would bill her for his past legal services, which he had been

performing on a pro bono basis for over a year.  *Id.* ¶¶ 13, 16.

After the call ended, Kairey confessed to Hirsch that Butterman

"forc[es] her to sign affidavits and motion papers" against

Hirsch and "that she doesn't even look at the papers when she

signs them."  *Id.* ¶ 15.

According to Hirsch, Butterman refuses to settle the

Divorce Action, against Kairey's wishes, for two reasons: First,

Butterman seeks to "extort" Hirsch to settle a separate federal

lawsuit in which Hirsch is the plaintiff.  *Id.* ¶¶ 33, 36.

(Hirsch alleges that the defendants in that lawsuit — *Hirsch v.

Beda*, No. 22-CV-5011, currently pending before this Court — have

paid Butterman "substantial sums of money" to represent Kairey

in the Divorce Action.  *Id.* ¶ 33.)  Second, Butterman is using

the Divorce Action to inflict emotional distress and financial

harm on Hirsch as "retribution" for: (a) bringing the *Hirsch v.

Beda* lawsuit in the first instance; and (b) "filing a grievance

against" Butterman.  *Id.*

*Hirsch I* alleges claims for abuse of process and IIED

against Butterman, and for civil conspiracy against Butterman

and Kairey. *Id.* ¶¶ 30–50. Among other relief, Hirsch seeks a permanent injunction prohibiting Butterman's continued prosecution of the Divorce Action; compensatory and punitive damages of at least $5 million; and a declaration that Butterman had violated various New York Rules of Professional Conduct. *Id.* at 10–11.

**B.   *Hirsch II***

In his second action, Hirsch alleges that Butterman disseminated a series of false accusations against him in response to Hirsch's attempts to disqualify Butterman as Kairey's attorney. *Hirsch II* Compl. ¶¶ 7–15, ECF No. 2.

On September 14, 2022, Butterman emailed an affidavit, signed by Kairey, to various persons associated with New York's state judiciary, as well as the New York Attorney General's office and the New York State Commission on Judicial Conduct. *Id*. ¶¶ 6–8. Butterman's cover email, which Hirsch attaches to the complaint, indicates that he sent the affidavit in response to a proposed order to show cause filed by Hirsch, which sought to disqualify Butterman from representing Kairey in the *Wahba* Action. *See id.* ¶ 7; *see also id.* at 16 (Sept. 14, 2022 J. Butterman email). The affidavit, which Butterman allegedly "coerced" Kairey to sign, "falsely accuses" Hirsch of, among other things: sending her abusive communications; harassing and attempting to intimidate Dr. Mark Rand, the court-appointed

forensic psychologist; and making misrepresentations to Judge Quinones, the judge presiding over the Divorce Action. *See id.* ¶¶ 10-15; *id.* at 13-15 (Sept. 13, 2022 Kairey Aff.).

Hirsch alleges claims for defamation, IIED, and civil conspiracy against Kairey and Butterman. *Id.* ¶¶ 16-42. He seeks, among other relief, another $5 million in compensatory and punitive damages and a permanent injunction enjoining the Defendants, without any specified limitations, "from using pleadings from civil actions where Elliot Hirsch and Elizabeth Kairey are parties" and "from speaking about the Plaintiff in any forum." *Id.* at 9-10.

## C.   *Hirsch III*

The *Hirsch III* complaint appears to relate to Butterman's response to another disqualification motion — similar to the one giving rise to the *Hirsch II* complaint, but filed in the Divorce Action rather than the *Wahba* Action. Much like the *Hirsch II* complaint, *Hirsch III* involves claims of defamation and IIED for false accusations that Hirsch alleges Butterman made against him in his sworn submission. *Hirsch III* Compl. ¶¶ 7-36, ECF No. 2.

Specifically, on September 19, 2022, Butterman filed an affirmation with the Kings County Supreme Court in response to Hirsch's motion to disqualify him for continuing the Divorce Action "against his client[']s will." *Id.* ¶¶ 7, 34; *see also*

*id.* at 16–24.  That affirmation, Hirsch alleges, accuses Hirsch of behaving abusively towards Kairey, Hirsch and Kairey's child, Butterman himself, and others including court personnel.  *Id.* ¶ 8.  Butterman also affirms that Hirsch attempted to intimidate Dr. Rand by, among other things, accusing him of criminal harassment.  *Id.* ¶¶ 9–10; *see id.* at 19.  According to Hirsch, Butterman repeated these allegations of abuse and witness intimidation during the oral argument over Hirsch's disqualification motion in the presence of Kairey, court personnel, and others.  *Id.* ¶ 11.

In addition to defamation and IIED, *Hirsch III* asserts a claim against Butterman under the attorney-misconduct provisions of the New York Judiciary Law for allegedly deceiving the court and delaying litigation for his own gain.  *Id.* ¶¶ 37–65.  The allegations in support of this claim broadly repeat those alleged in *Hirsch I*.  Hirsch again claims that Butterman is refusing to settle the Divorce Action despite Kairey's wish to do so.  *Id.* ¶¶ 41, 45–46.  Moreover, Butterman has "engaged in deceitful behavior" by representing to the New York state court that "his client authorizes him to prosecute the action." *Id.* ¶ 50.  In reality, Hirsch alleges, Butterman "coerced" Kairey to attest that he is acting in accordance with her wishes

to proceed. *Id.* ¶ 49.[3]  In refusing to settle, Butterman is prolonging the Divorce Action to burnish his own reputation, attract new clients, and continue collecting money from the *Hirsch v. Beda* defendants, who Hirsch alleges are paying Butterman "as a form of revenge and extortion" after Hirsch sued them. *Id.* ¶¶ 42–45, 62.

In relief, Hirsch seeks "not less than" $5 million in compensatory and punitive damages; an injunction prohibiting Butterman's continued service as attorney of record in the Divorce Action; and a declaratory judgment that Butterman violated various New York Rules of Professional Conduct. *Id.* at 12–13.

D.    *Hirsch IV*

Finally, much like *Hirsch II* and *Hirsch III*, Hirsch brings claims for defamation and false light against Butterman for submitting a false affirmation. *Hirsch IV* Compl. ¶¶ 7–10. Hirsch alleges that Butterman's October 28, 2022 affirmation in the *Wahba* Action "intentionally falsely accused [him] of committing domestic abuse" and "harassment" against Kairey. *Id.* ¶¶ 7–8.[4]  In relief, he seeks a familiar set of remedies: at

---

[3] This allegation appears to refer to the affidavit at issue in *Hirsch II.  See Hirsch II* Compl. ¶ 9; *see also id.* at 13–15.

least $5 million in compensatory, punitive, and treble damages;
an order requiring Butterman to rescind the affirmation and to
cease defaming Hirsch; and a declaratory judgment that Butterman
had violated various New York Rules of Professional Conduct.
*Id.* at 6.

*   *   *

In an April 1, 2023 letter filed in *Hirsch III*, Hirsch
indicated that Justice Quinones had issued a final judgment in
the Divorce Action.  *Hirsch III*, ECF No. 12 at 1.  He has not
indicated whether he has appealed that judgment or whether any
appellate proceedings are ongoing.

---

[4] Butterman's affirmation, which responds to a motion for sanctions
filed by Hirsch, states in relevant part:

> As detailed in the cross-motion to dismiss, plaintiff has
> engaged in a concerted campaign of harassment against Ms.
> Kairey, of which this is only one of numerous lawsuits brought
> by plaintiff seeking to intimidate and harass Ms. Kairey, her
> family and her counsel, all arising from or related to the
> parties divorce proceedings. Allowing this harassment to
> continue in the absence of a meritorious cause of action as well
> as such deep prejudice to defendant in defending yet another
> frivolous suit brought against her by plaintiff is plainly the
> antithesis of the interests of justice. *Indeed, plaintiff's
> actions in this matter and the related lawsuits constitute
> nothing less than domestic abuse and harassment through
> litigation*, which deeply parallels the very recent case decided
> by the Hon. Kathleen Waterman-Marshall, *J.N. v. T.N.*, New York
> Law Journal, October 14, 2022. (New York Sup. Ct., New York
> Country 2022).

Affirmation in Opposition at 1, 5, *Hirsch v. Wahba*, Index No.
514979/2021 (N.Y. Sup. Ct. Oct. 28, 2022), Doc. No. 100 (emphasis
added).

## II.  **Legal Standard for *Pro Se* Plaintiffs**

Under 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss an *in forma pauperis* action that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  At the pleading stage, "all well-pleaded, nonconclusory factual allegations" in the complaint are assumed to be true.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).[5]  *Pro se* complaints are generally held to less stringent standards than pleadings drafted by attorneys, and the Court will read a *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191 (2d Cir. 2008).

Still, a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  Thus, a *pro se* complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Williams v. Bronx Cnty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[5] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

544, 570 (2007)).  "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011).  Although factual allegations in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.   Discussion

Almost all of Hirsch's claims allege a state-law tort. "A federal court sitting in diversity applies the choice-of-law rules of the forum state."  *See Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021).  Thus, New York's choice-of-law rules govern, as applied to each tort as set out below.

### A.   Defamation, IIED, and False Light

Hirsch's claims for defamation, IIED, and false light all fail for the same reason: The only factual content Hirsch alleges in support of each claim is protected by the "litigation privilege" — the privilege that attaches to statements made in the course of judicial proceedings.  Without unprivileged factual content to sustain any of these claims, they must be dismissed.

As a threshold issue, the Court must determine which state's rules — New York or New Jersey — apply.[6]  Under New York's choice-of-law rules, a court looks first to whether there is an actual conflict between the laws of the two states at issue.  *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998).  Laws are in conflict "where the applicable law from each jurisdiction provides different substantive rules."  *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

In this case, it is unnecessary to decide any choice-of-law questions on Hirsch's defamation, IIED, and false light claims because the litigation privilege — under either state's law — provides an independently sufficient ground to dismiss each one.  *See, e.g.*, *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18-CV-5290, 2019 WL 1768965, at *4–5 (S.D.N.Y. Apr. 4, 2019).

There is no actual conflict between New York's and New Jersey's litigation privileges.  *See Koch v. Pechota*, 744 F. App'x 105, 114 (3d Cir. 2018).  In both states, the privilege is absolute: "[A]bsolute immunity from liability for defamation exists for oral or written statements made . . . in connection

---

[6] The complaints' allegations implicate these two states: Hirsch is a resident of New Jersey, but almost all of the incidents giving rise to his claims occurred in New York (Manhattan and Brooklyn).

with a proceeding before a court." *Front, Inc. v. Khalil*, 28
N.E.3d 15, 18 (N.Y. 2015); *accord Hawkins v. Harris*, 661 A.2d
284, 289 (N.J. 1995); *Peterson v. Ballard*, 679 A.2d 657, 659
(N.J. Super. Ct. App. Div. 1996) ("Statements by attorneys,
parties and their representatives made in the course of judicial
or quasi-judicial proceedings are absolutely privileged and
immune from liability.").  The speaker's motive in making such
statements has no bearing on whether the privilege applies.  *See*
*Park Knoll Assocs. v. Schmidt*, 451 N.E.2d 182, 184 (N.Y. 1983);
*Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426, 437
(N.J. 2006).  And in each state, the privilege is read
expansively to protect oral and written statements made "in
connection with" a judicial proceeding, regardless of whether
the contested statements were given under oath or made in a
courtroom.  *See Front*, 28 N.E.3d at 18; *Hawkins*, 661 A.2d at
289.

Absent any actual conflict, the Court is "free to
apply" New York law and does so here.  *Int'l Bus. Machs. Corp.*,
363 F.3d at 143.  In New York, courts apply the privilege to
statements regarding "any matter which, by any possibility,
under any circumstances, at any stage of the proceeding, may be
or may become material or pertinent." *Kelly v. Albarino*, 485

F.3d 664, 666 (2d Cir. 2007).[7]  The inquiry into a statement's materiality or pertinence examines its relation "to the issue[s] to be resolved in the proceeding."  *See Bisogno v. Borsa*, 954 N.Y.S.2d 896 (App. Div. 2d Dep't 2012).  The threshold here is extremely low: any statement "that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability" is protected by the privilege.  *See O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 1479 (2d Cir. 1996) (quoting *Grasso v. Mathew*, 564 N.Y.S.2d 576, 578 (App. Div. 3d Dep't 1991)).  "Pertinenc[e] is a question of law for the court to decide."  *Mosesson v. Jacob D. Fuchsberg L. Firm*, 683 N.Y.S.2d 88, 89 (App. Div. 1st Dep't 1999).

This expansive scope of the privilege, and the absolute immunity it confers, advance "the public interest in the freedom of participants in litigation to 'speak with that free and open mind which the administration of justice demands.'"  *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 217

---

[7] New Jersey law is consistent on this principle as well.  *See Koch*, 744 F. App'x at 114.  To be privileged, a statement must only "have some relation to the course of the proceedings."  *Hawkins*, 661 A.2d at 290.  "The pertinency thus required is not a technical legal relevancy . . . but rather a general frame of reference and relationship to the subject matter of the action."  *Id.*

(E.D.N.Y. 2012) (quoting *Youmans v. Smith*, 47 N.E. 265, 268

(N.Y. 1897)).  As the New York Court of Appeals has emphasized:

> [T]o allow such statements to be a basis for a
> defamation action would be an impediment to justice,
> because it would hamper the search for truth and
> prevent making inquiries with that freedom and
> boldness which the welfare of society requires . . . .
> [R]elevant statements made in judicial or quasi-
> judicial proceedings are afforded absolute protection
> so that those discharging a public function may speak
> freely to zealously represent their clients without
> fear of reprisal or financial hazard.

*Front*, 28 N.E.3d at 18.

Here, all of Kairey and Butterman's allegedly

defamatory statements fall squarely within the privilege's

absolute protection.  First, they all relate to matters that are

or might be at issue in the Divorce Action and *Wahba* Action.

Specifically, assertions that Hirsch behaved abusively towards

Kairey and their child; intimidated a court-appointed forensic

psychologist; and made misrepresentations to the court could all

be (or become) relevant in the course of those litigations.

Indeed, the affidavit and affirmations at issue all respond to

sanction and disqualification papers filed against Butterman by

Hirsch in each case.  These statements are plainly protected.

*See Ruchinsky v. Devack*, No. 14-CV-2219, 2014 WL 2157533, at *11

(E.D.N.Y. May 23, 2014) (extending privilege to affidavit

statements regarding custody arrangement and dismissing perjury

claims); *see also Grasso*, 564 N.Y.S.2d at 578 (extending

privilege to parties' correspondence and settlement offers in divorce action, which "pertain[ed] to child support and defendant's ability to pay").

Moreover, the communications alleged in the complaints — sworn submissions submitted to a court and statements made during oral argument — all garner the protection of the litigation privilege.  *See Kelly*, 485 F.3d at 665–66 (affidavits submitted to court); *O'Brien*, 898 F. Supp. at 170–71 (statements made in opening statement at trial, in affidavit supporting claims, and in communications by attorneys to the court).  In *Hirsch III* and *Hirsch IV*, the statements upon which Hirsch asserts his claims appeared in affirmations that Butterman filed on the docket.  *See Hirsch III* Compl. ¶ 7; *Hirsch IV* Compl. ¶ 7. In *Hirsch III*, Hirsch also bases his claims in statements Butterman made during oral argument.  *See Hirsch III* Compl. ¶ 11.

The privilege also extends to the affidavit at issue in *Hirsch II*, despite the allegation that Butterman distributed it more broadly than just to the state court.  Butterman's cover email is addressed to the "Honorable Justice Rothenberg" and refers to disqualification papers Hirsch had filed in the *Wahba* Action earlier that day.  *See Hirsch II* Compl. ¶ 7; *id.* at 16. Among others, Butterman copied employees of the New York Attorney General's office and the New York State Commission on

Judicial Conduct.  The email attaches, "[i]n response," an "affidavit of Ms. Kairey prepared for" a "concurrent" disqualification motion in the Divorce Action.  *See id.* ¶ 7; *id.* at 13–15.  Thus, for the reasons already noted above, the statements in that affidavit were clearly made in connection with, and were relevant to, issues being litigated in both the Divorce Action and the *Wahba* Action.  That some recipients of the affidavit were not parties to either proceeding does not preclude the privilege's application.  *See, e.g.*, *Tacopina v. O'Keeffe*, 645 F. App'x 7, 8 (2d Cir. 2016) (statements in affidavit, shared by attorney with press before filing it in court, protected by litigation privilege); *Feist v. Paxfire, Inc.*, No. 11-CV-5436, 2017 WL 177652, at *5 (S.D.N.Y. Jan. 17, 2017) (draft complaint sent to reporter protected).

Finally, while it is more frequently asserted as a defense to defamation claims, the litigation privilege likewise warrants the dismissal of Hirsch's claims for IIED and false light.  *See, e.g.*, *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 105–06 (S.D.N.Y. 2020) (dismissing IIED claim because statements at issue were protected by litigation privilege); *Peterson v. HVM LLC*, No. 14-CV-1137, 2016 WL 845144, at *12–13 (D.N.J. Mar.

3, 2016) (dismissing false light claim).[8]  Those claims too are dismissed.[9]

In short, all of the statements and conduct upon which Hirsch brings his claims for defamation, IIED, and false light are protected by the litigation privilege.  Such claims must therefore be dismissed.

---

[8] Under New Jersey law, false light is recognized as a variant of the tort for invasion of privacy, and "involves publicity that unreasonably places the other in a false light before the public."  *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1115 (N.J. 2009).  The tort "has two elements: (1) the false light in which the other was placed would be highly offensive to a reasonable person; and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  *Id.* at 1116.

False light overlaps with, but is distinct from, defamation.  A plaintiff does not need to prove that he was defamed to succeed on a false light claim — only that he had been subjected to "unreasonable and highly objectionable publicity" such that he was "placed before the public in a false position."  *See Savely v. MTV Music Television*, No. 11-CV-1021, 2011 WL 2923691, at *5 (D.N.J. July 18, 2011).  Notably, New York does not recognize a cause of action for false light.  *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 703 (N.Y. 1993).  The Court declines to perform a full choice-of-law analysis on Hirsch's false-light claim since that it finds that no unprivileged allegations can sustain Hirsch's false-light claim, even if New Jersey law were to apply.

[9] Even if litigation privilege did not apply to Hirsch's IIED claims, the complaints fail to allege "extreme and outrageous conduct" by Butterman and Kairey to support those claims.  *See Howell*, 612 N.E.2d at 702; *Buckley v. Trenton Saving Fund Society*, 544 A.2d 857, 863 (N.J. 1988).  To be "extreme and outrageous," such conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Howell*, 612 N.E.2d at 702; *accord Buckley*, 544 A.2d at 863.  Hirsch's claims, which are "based upon allegations involving statements and actions in the context of adversarial litigation," fall short of that bar.  *See, e.g.*, *Yalkowsky v. Century Apartments Assocs.*, 626 N.Y.S.2d 181, 183 (App. Div. 1st Dep't 1995) (affirming dismissal of IIED claims); *Lazich v. Vittoria & Parker*, 592 N.Y.S.2d 418, 419 (App. Div. 2d Dep't 1993) (same).

**B.   Abuse of Process**

For purposes of Hirsch's claim and this Order, there is likewise no actual conflict in New York and New Jersey law defining the tort of abuse of process.  Under New York law, a plaintiff must allege that a defendant has "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  Similarly, New Jersey law requires the complaint to allege that a defendant has (1) "set legal process in motion for an improper ulterior purpose," and (2) has "committed a willful act in the use of process which perverts the regular conduct of the proceeding to accomplish the improper purpose." *Voytko v. Ramada Inn of Atl. City*, 445 F. Supp. 315, 325 (D.N.J. 1978).  Again, absent any actual conflict, New York's choice-of-law rules permit the Court to apply New York law in analyzing a claim. *Int'l Bus. Machs. Corp.*, 363 F.3d at 143.[10]

Thus, to state an abuse of process claim, Hirsch must plausibly allege that Butterman's purposes in litigating the Divorce Action differed from the purposes for which that legal

---

[10] The *Hirsch I* complaint itself sets out the elements of abuse of process under New York law. *See Hirsch I* Am. Compl. ¶ 31.

process was created.  *Savino v. City of New York*, 331 F.3d 63, 77-78 (2d Cir. 2003).  Given Hirsch's allegations of improper purposes, as set out in the *Hirsch I* background section above, the abuse of process claim may proceed beyond the Court's limited review at the Section 1915 stage.

**C.   Judiciary Law § 487**

Next, Hirsch brings a claim against Butterman under the attorney-misconduct provisions of New York's Judiciary Law, which allows for a private right of action.[11]  An attorney may be held civilly liable if he: (1) "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party," N.Y. Judiciary Law § 487(1), or (2) "[w]ilfully delays his client's suit with a view to his own gain."  *Id.* § 487(2).  Hirsch's claim, however, is not properly before this Court.

"[I]t is well-settled that if an allegedly injured party is aware that a lawyer is violating § 487 at the time the violation occurs, the victim's exclusive remedy is to bring an action in the course of that same proceeding."  *Sanchez v. Abderrahman*, No. 10-CV-3641, 2012 WL 1077842, at *12 (E.D.N.Y.

---

[11] Section 487 "permits a civil action to be maintained by any party who is injured by an attorney's intentional deceit or collusion in New York on a court or on any party to litigation, and it provides for treble damages." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008).

Mar. 30, 2012) (citing cases).  In other words, a party's "remedy for a violation of Section 487 stemming from an attorney's actions in a litigation lies exclusively in that lawsuit itself, not a second plenary action."  *All. Network, LLC v. Sidley Austin LLP*, 987 N.Y.S.2d 794, 802 (Sup. Ct. 2014) (citing *Yalkowsky*, 626 N.Y.S.2d at 182); *see, e.g.*, *Chibcha Rest., Inc. v. David A. Kaminsky & Assocs., P.C.*, 958 N.Y.S.2d 135, 137 (App. Div. 1st Dep't 2013); *Urias v. Daniel P. Buttafuoco & Assocs., PLLC*, 104 N.Y.S.3d 712, 714–15 (App. Div. 2d Dep't 2019).

Courts have recognized an exception to this rule, allowing a separate lawsuit to proceed where the alleged misconduct "in the underlying action was merely a means to the accomplishment of a larger fraudulent scheme which was greater in scope than the issues determined in the prior proceeding." *See Specialized Indus. Servs. Corp. v. Carter*, 890 N.Y.S.2d 90, 92 (App. Div. 2d Dep't 2009).  The New York Court of Appeals case to which *Specialized Industrial* cites for this exception, *Newin Corp. v. Hartford Acc. & Indem. Co.*, 333 N.E.2d 163 (N.Y. 1975), sheds light on what a "larger fraudulent scheme" entails. There, the Court held that, while plaintiffs could not sue for the subornation of perjury in a prior civil proceeding, an exception existed "where the perjury is merely a means to the accomplishment of a larger fraudulent scheme." *Newin*, 333

N.E.2d at 166.  Holding that the exception applied in that case,

the Court of Appeals reasoned:

> Plaintiffs have alleged that the fraud committed in
> the bankruptcy proceedings is extrinsic and part of a
> larger scheme which goes beyond the scope of the
> trustee's law suit, which involved only [certain]
> bonds.  They do not charge fraud in the inducement to
> settlement. . . . .  Rather, they accept the fact of
> settlement but seek damages because [the defendant's]
> fraud was intended to extend beyond those bonds, so as
> to defeat or make more difficult any recovery under
> the excess coverage as well.  Moreover, unlike the
> cases in which recovery has been precluded, plaintiffs
> had no effective remedy in the prior action; an appeal
> could not have vindicated the independent rights
> pressed here.

*Id.* at 167.

Here, the complaint's allegations make clear that

Hirsch was aware of Butterman's actions at the time that they

occurred.  Indeed, he filed this federal suit while the alleged

misconduct in the Divorce Action was still ongoing.  *Hirsch III*

Compl. ¶¶ 37-53.  Nor does the complaint come close to

adequately alleging that Butterman's actions — namely,

misrepresenting Kairey's position in the Divorce Action — were

part of some larger fraudulent scheme extending beyond the

issues of that case, such that this claim would fall within the

exception set out in *Specialized Industrial* and *Newin*.  On the

contrary, Hirsch's allegations uniformly challenge Butterman's

litigation conduct in the Divorce Action.  *See Heriveaux v.*

*Lopez-Reyes*, 779 F. App'x 758, 760 (2d Cir. 2019) ("[Plaintiff]

has alleged only fraudulent acts that took place in the
underlying litigation, and the exception therefore does not
apply."); *cf. Michelo v. Nat'l Collegiate Student Loan Tr. 2007-
2*, 419 F. Supp. 3d 668, 711 (S.D.N.Y. 2019) ("Plaintiffs'
allegations that Defendants operated a widespread scheme to
fraudulently obtain default judgments in debt collection
proceedings fits squarely within this exception.").  For that
reason, Hirsch was required to bring (and could well have
brought) this claim in that state court proceeding.  *See
Sanchez*, 2012 WL 1077842, at *12; *Appel v. Schoeman Updike
Kaufman Stern & Ascher L.L.P.*, No. 14-CV-2065, 2015 WL 13654007,
at *10 (S.D.N.Y. Mar. 26, 2015).  Hirsch's Section 487 claim is
therefore dismissed.[12]

## D.   Civil Conspiracy

Finally, Hirsch asserts two claims for civil
conspiracy against both Kairey and Butterman in *Hirsch I* and
*Hirsch II*.  New York and New Jersey both recognize the tort of
civil conspiracy, and their state-specific elements present no
actual conflict here.  In New York, to state a claim of civil
conspiracy, a "plaintiff must demonstrate [an] underlying tort,

---

[12] While numerous courts have dismissed a Section 487 for failure to
state a claim, at least one court has considered this ground to be
jurisdictional.  *Compare Sanchez*, 2012 WL 1077842, at *12 (dismissing on Rule
12(b)(6) grounds), *with Seldon v. Bernstein*, 503 F. App'x 32, 33 (2d Cir.
2012) (affirming *sua sponte* dismissal of Section 487 claim for lack of
subject-matter jurisdiction).

plus the following four elements: (1) an agreement between two
or more parties; (2) an overt act in furtherance of the
agreement; (3) the parties' intentional participation in the
furtherance of a plan or purpose; and, (4) resulting damage or
injury." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y.
2009).  Similarly, in New Jersey, a civil conspiracy is "a
combination of two or more persons acting in concert to commit
an unlawful act, or to commit a lawful act by unlawful means,
the principal element of which is an agreement between the
parties to inflict a wrong against or injury upon another, and
an overt act that results in damage." *Morgan v. Union Cnty. Bd.
of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App.
Div. 1993).

　　　　Hirsch's claims would, once again, fail under either
state's standard.  First, a plaintiff must first adequately
state a claim for an underlying tort.  *See Kirch v. Liberty
Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) ("New York does
not recognize an independent tort of conspiracy."); *Filler v.
Hanvit Bank*, 156 F. App'x 413, 418 (2d Cir. 2005) ("A claim of
conspiracy cannot stand alone and must be dismissed if the
underlying independent tort has not been adequately pleaded.");
*accord Banco Popular No. America v. Gandi*, 876 A.2d 253, 263
(N.J. 2005) ("[T]he gist of the claim is not the unlawful
agreement, but the underlying wrong which, absent the

conspiracy, would give a right of action."); *G.D. v. Kenny*, 15 A.3d 300, 321 (N.J. 2011) (dismissing civil conspiracy claim where the plaintiff could not "establish that defendants committed an unlawful act or a wrong against him that constitutes a tort entitling him to a recovery").  As set forth above, with respect to *Hirsch II*, Hirsch has not plausibly stated a claim for defamation or IIED, upon which that complaint's civil conspiracy claim is predicated.  Because he does not adequately allege an underlying tort in that case, the civil conspiracy claim must also fail.

Second, with respect to *Hirsch I*, Hirsch fails to adequately plead the existence of an agreement between Kairey and Butterman, in connection with the underlying torts of abuse of process and IIED.  In fact, the complaint suggests the opposite: it alleges that Kairey "is being abused by" Butterman, *see Hirsch I* Am. Compl. ¶ 27, and that Butterman "is going against his client's direct instruction to settle the custody matter" and instead continuing to act in the Divorce Action "without the permission and against the will of his client," *see id.* ¶¶ 29, 34.  The allegation that "Kairey is *ipso facto* in agreement with Butterman," *id.* ¶ 50, is thus the type of conclusory statement — a legal conclusion masquerading as a factual assertion — that a Court need not credit when assessing

a complaint's plausibility.  *Iqbal*, 556 U.S. at 678.  This civil conspiracy claim too must be dismissed.

### IV.   Leave to Amend

The Second Circuit has held that leave to replead should be liberally granted to *pro se* litigants.  *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once."); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).  "[B]ut amendment should be denied where the complaint gives no 'indication that a valid claim might be stated.'"  *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *3 (2d Cir. Sept. 15, 2022) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  The Court concludes that granting leave to amend would be futile and declines to do so, in light of the litigation privilege's absolute bar to Hirsch's defamation, IIED, and false light claims, and the insolvable infirmities identified with respect to the Section 487 and civil conspiracy claims.

### V.   Conclusion

For the reasons stated above, the requests to proceed *in forma pauperis* in *Hirsch v. Butterman*, No. 22-CV-5064 and *Hirsch v. Butterman*, No. 22-CV-5815 are granted.  The complaints in *Hirsch v. Butterman*, No. 22-CV-5925; *Hirsch v. Butterman*, No. 22-CV-5815; and *Hirsch v. Butterman*, No. 22-CV-7167 are

dismissed in their entirety.  All pending motions in those three
cases are disposed of via this Order.

Hirsch's claims for IIED and civil conspiracy in
*Hirsch v. Butterman*, No. 22-CV-5064 are likewise dismissed.
That case will proceed as to the abuse of process claim against
defendant Butterman.  The Clerk of Court is respectfully
directed to prepare and issue a summons for defendant Butterman.
The U.S. Marshals are directed to serve the summons, the amended
complaint, and this Order on this defendant without pre-payment
of fees.  The case is referred to Magistrate Judge Scanlon for
pretrial supervision.

Finally, the Court notes that Hirsch has filed
numerous actions in this district and the Southern District of
New York — almost all of which relate to events that occurred in
New York state court proceedings.[13]  "If a litigant has a history
of filing vexatious, harassing or duplicative lawsuits, courts
may impose sanctions, including restrictions on future access to
the judicial system."  *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d
Cir. 2005).  Indeed, in an August 23, 2021 order dismissing one
such state court-related case, Chief Judge Swain of the Southern
District warned Plaintiff against filing frivolous actions in

_____

[13] *See, e.g., Hirsch v. Miles*, No. 21-CV-3846 (E.D.N.Y.); *Hirsch v. Shammah*, No. 21-CV-3938 (E.D.N.Y.); *Hirsch v. Mastro*, No. 21-CV-4142 (E.D.N.Y.); *Hirsch v. Wade*, No. 21-CV-4147 (E.D.N.Y.); *Hirsch v. Kairey*, No. 22-CV-6716 (E.D.N.Y.); *Hirsch v. Quinones*, No. 21-CV-6311 (S.D.N.Y.).

that court.  *See Hirsch v. Quinones*, No. 21-CV-6311, 2021 WL 3773640, at *4 (S.D.N.Y. Aug. 23, 2021).[14]

While one claim from these four cases will survive, this Court nevertheless warns Plaintiff that it will not tolerate vexatious or frivolous litigation.  Here, for example, the bulk of defamation and IIED claims — which are predicated on statements made by Hirsch's wife and her attorney in state court proceedings — are plainly frivolous.  Any further frivolous or vexatious filings will result in the issuance of an order to show cause why Plaintiff should not be barred from filing future lawsuits in this Court without first obtaining leave of the Court.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any *in forma pauperis* appeal from this order would not be taken in good faith.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    August 28, 2023
          Brooklyn, New York

_____

[14] Plaintiff is a law school graduate who has passed the New Jersey bar examination.  *See Hirsch IV* Compl. ¶ 18.