```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 ELLIOT HIRSCH,

                    Plaintiff,            MEMORANDUM & ORDER
                                          22-CV-5064(EK)(VMS)

       -against-

 JAY BUTTERMAN,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Elliot Hirsch's now-ex wife, Elizabeth Kairey, sued for divorce. In the wake of his divorce, Hirsch, proceeding *pro se*, brought this action against Jay Butterman, Kairey's divorce attorney. Hirsch argues that Butterman improperly prevented Kairey from settling the divorce proceedings so that Butterman could use the ongoing litigation as leverage to obtain concessions from Hirsch that were unrelated to the divorce itself.

Invoking this Court's diversity jurisdiction, Hirsch asserts a single cause of action for abuse of process.[1]

---

[1] Hirsch initially alleged several claims against both Kairey and Butterman. Reviewing under Section 1915, this Court dismissed all causes of action against Kairey and allowed only one claim, for abuse of process, to proceed against Butterman. ECF No. 20. Though Hirsch is proceeding *pro se*, he has passed the New Jersey bar examination and (as far as the record reveals) is pending admission there. ECF No. 36. While "a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," when such a litigant has legal experience, as Hirsch does, "it falls well

Butterman has now moved to dismiss for failure to state a claim. For the following reasons, that motion is granted.

## I. Background

The following facts are drawn from the operative complaint and assumed true for purposes of the motion to dismiss. *Holmes v. Grubman*, 568 F.3d 329, 332 (2d Cir. 2009). Ms. Kairey commenced the divorce action in 2018. Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br.") at 10, ECF No. 30-9. Nearly three years later, with the divorce proceedings still ongoing, Hirsch brought a separate action — filed in the District of New Jersey, then transferred to this Court — against Kairey's aunt and cousins, later adding Kairey herself and numerous others in her circle. *Hirsch v. Beda et. al*, No. 1:22-cv-5011 (hereinafter "*Beda*"). The defendants, Hirsch alleged, had organized a campaign of defamation and harassment against him for purportedly refusing to grant Kairey a religious divorce under Jewish law. *Beda*, Amended Complaint ¶ 1, ECF No. 168. Hirsch brought claims under RICO, characterizing the campaign as a racketeering enterprise, and under state tort law. *Id.* ¶ 209-97.

---

within a district court's discretion to lessen the solicitude that would normally be afforded," and "a lawyer representing himself ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010); *United States v. Pierce*, 649 F. App'x 117, 117 n.1 (2d Cir. 2016) (disbarred lawyers also receive no special solicitude).

While both cases — the divorce action and the *Beda* action — were pending, Hirsch and Kairey met at a hospital where their daughter was being treated. Second Am. Compl. ("Compl.") ¶ 9, ECF No. 25. Hirsch alleges that, during this meeting, Kairey offered to settle their divorce on his terms in exchange for Hirsch dropping her (but not her co-defendants) from the *Beda* action. *Id*. ¶ 16. Hirsch agreed, and Kairey delivered the news to Butterman by email. *Id*. ¶ 17.

As overheard by Hirsch, Butterman then called Kairey and berated her for "leaving the community to the wolves" — that is, for deserting the other *Beda* defendants, who belonged to Kairey's Syrian Jewish community. *Id*. ¶ 21. According to Hirsch, Butterman threatened to retroactively bill Kairey for his *pro bono* legal services if she did not abandon her agreement with Hirsch and instead insist that any divorce settlement would be contingent on Hirsch dropping the *Beda* case in its entirety. *Id*. ¶¶ 21, 24, 35, 37. Butterman's coercion proved successful, allowing the attorney to "maintain control over the legal proceedings" and litigate the divorce to its conclusion. *Id*. ¶ 37. Throughout the process, Butterman "repeatedly" advised Hirsch's attorney that "he would not allow the case to settle unless [Hirsch] dismissed [*Beda*] in totality." *Id*. ¶ 45.

In Hirsch's view, Butterman is liable for abuse of process because he prevented the divorce case from settling,

3

against his own client's wishes, to "extort, torment, harass, and intimidate" Hirsch in pursuit of a collateral objective: namely, obtaining a favorable outcome for the other *Beda* defendants.  *Id.* ¶ 21, 40, 49.  Some of those defendants allegedly paid Butterman "tens of thousands of dollars, if not more."  *Id*. ¶¶ 41, 49.  Butterman's collateral objectives included (1) inducing Hirsch to drop the *Beda* case, and (2) "compelling" Hirsch through the ongoing divorce proceedings to provide testimony and "other evidentiary documents" that Butterman could then pass along to the *Beda* defendants.  *Id.* ¶¶ 42, 52, 55, 61.  Hirsch alleges that Butterman was further motivated by a personal vendetta against him.  *Id*. ¶¶ 24, 63.

Hirsch seeks compensatory damages for the "unjustified legal fees" he incurred and "enduring emotional distress" he suffered.  *Id*. ¶ 66.  He also seeks a declaratory judgment and punitive damages totaling, together with the compensatory damages, "not less than $5,000,000."  *Id*. at 12.

## II.  Discussion

Hirsch fails to state a claim of abuse of process.  As the Court earlier held and both parties agree, New York law applies.  ECF No. 20 at 12.  As further described below, to state an abuse of process claim under New York law, a plaintiff must plausibly allege that the defendant (1) employed regularly issued legal process to compel performance or forbearance of

4

some act (2) with intent to do harm without excuse or justification (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).[2] In addition, the plaintiff must (4) allege special damages.[3] *Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Loc. 1889*, 343 N.E.2d 278, 284 (N.Y. 1975). Hirsch does not satisfy prongs (1) or (4).

### A. Hirsch Does Not Identify A Legally Recognized "Process"

Hirsch identifies "the matrimonial action" as the legal process that Butterman ostensibly abused. Compl. ¶ 61. He does not allege that Kairey initiated the divorce in bad faith, or that the divorce action was itself abusive. Rather, he sees abuse in Butterman's improper *continuation* of Kairey's civil action, after the parties had purportedly reached an agreement to settle it. The threshold question is whether such

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[3] Although New York law requires actual "or" special damages, these terms denote the same standard of heightened particularity for a tort claim. *See Bohm v. Holzberg,* 365 N.Y.S.2d 262, 264 (N.Y. App. Div. 2d Dep't 1975) ("[A] cause of action for prima facie tort must contain a statement of reasonably identifiable losses sustained by the plaintiff, i.e., only actual or special damages can be recovered"). The operative distinction is instead between "special damages" and "general damages." *See* Lee S. Kreindler et al., *New York Law of Torts* §§ 1:91, 21:5, 21:140 (2023). Therefore, this Court follows the lead of others in referring to these only as "special damages." *See, e.g.*, *Stevens & Co. v. Espat*, No. 24-CV-5223, 2025 WL 950989, at *11 (S.D.N.Y. Mar. 28, 2025); *Brown v. Bethlehem Terrace Assoc.*, 525 N.Y.S.2d 978, 979 (N.Y. App. Div. 3d Dep't 1988).

continuation did, in fact, entail the employment of a legally recognized "process."

New York courts have narrowly defined "process" as a "direction or demand" causing some "interference with one's person or property."  *Williams v. Williams*, 246 N.E.2d 333, 335 (N.Y. 1969); *see also HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 106 (S.D.N.Y. 2020).  Examples include "attachment, execution, garnishment, or sequestration proceedings, or arrest of the person, or criminal prosecution, or even such infrequent cases as the use of a subpoena for the collection of a debt."  *Williams*, 246 N.E.2d at 335 n.1 (quoting William Prosser, *Torts* 877–8 (3d ed. 1964)).  The initiation of *criminal* prosecution, including arrest or arraignment, can entail process.  *See, e.g.*, *Cook*, 41 F.3d at 80.  This makes intuitive sense: whether a defendant is detained pretrial, released on bond, or subjected to supervised release, there is an interference with his person or property.  By contrast, the initiation of a civil lawsuit does not necessarily entail interference with personal liberty or property, and the New York courts have accordingly held that it does not constitute "process" capable of being abused.  *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984); *Muro-Light v. Farley*, 944 N.Y.S.2d 571, 572 (N.Y. App. Div. 2d Dep't 2012); *Stevens & Co. v. Espat*, No. 24-CV-5223, 2025 WL 950989,

6

at \*11 (S.D.N.Y. Mar. 28, 2025), *reconsideration denied*, No. 24-CV-5223, 2025 WL 1425324 (S.D.N.Y. May 16, 2025).[4]

In the course of a civil suit, interference with person or property could arise upon the court's issuance of a provisional remedy, such as a temporary restraining order. *See Anderson v. Pegalis*, 540 N.Y.S.2d 843, 845 (N.Y. App. Div. 2d Dep't 1989). A subpoena issued by a party can also cause the requisite interference, at least in extreme cases. *See, e.g., Bd. of Ed. of Farmingdale*, 343 N.E.2d at 278 (school board stated valid claim where defendant had subpoenaed 87 of the school board's teachers to appear on a single day, with the aim of disrupting its operations and forcing it to hire costly substitutes); *Ginsberg v. Ginsberg*, 443 N.Y.S.2d 439, 441 (N.Y. App. Div. 2d Dep't 1981) (defendant stated abuse of process counterclaim against her estranged husband, who used subpoenas to compel her attendance at more than sixty days of hearings, with the aim of keeping her from working and exhausting her

---

[4] Some federal courts have assumed, without deciding, that the initiation of a civil action can be "process." *See, e.g., Demirovic v. Ortega*, No. 15-cv-327, 2016 WL 11472745, at \*13 (E.D.N.Y. Sept. 15, 2016), *aff'd*, 771 F. App'x 111 (2d Cir. 2019) (no abuse of process where a civil action to recover unpaid wages did not have a collateral objective); *BBF Partners LLC v. Mon Ethos Pro Consulting LLC*, 20-cv-5544, 2022 WL 612974, at \*4 (E.D.N.Y. Mar. 2, 2022) (finding that it was not an abuse of process to initiate a lawsuit with the aim of obtaining a settlement designed to relieve the plaintiff of liability to the defendant for breach of contract). These opinions do not explicitly identify the initiation of a civil suit as process. Rather, they bypass this prong of the tort and proceed directly to explaining why the third prong, the existence of a collateral objective, was not met.

7

financial resources). But absent one of these or similar devices, the continuation of civil litigation cannot constitute "process" for the same reason that the initiation thereof cannot: the burden of defending a suit, no matter how frivolous, does not necessarily interfere with person or property. *See Teddy Volkswagen of the Bronx, LLC v. Demersky*, No. 19-CV-2337, 2020 WL 6424115, at *2 (S.D.N.Y. Nov. 1, 2020) (allegations of "frivolous claims, extensive discovery, unnecessary motion practice, and other bad-faith perversions of legitimate legal process" fail to specify process capable of abuse). Neither party surfaced, nor has this Court found, a single court in this circuit or New York state that has held — or even assumed — that the mere continuation of a civil suit is "process."

Hirsch does not allege that any qualifying device (such as a subpoena) was improperly used here. He does argue in his brief that he was "[c]ompell[ed] . . . to attend court proceedings under threat of contempt." Pl.'s Decl. in Opp'n to Mot. to Dismiss ("Opp'n.") ¶ 12, ECF No. 33. In his complaint, he alleges he was "compel[led] . . . to testify and provide [Butterman] with other forms of material evidence for purposes of providing said material to the [d]efendants in [the *Beda*] action." Compl. ¶ 61. But he cites no case for the proposition that a deposition can qualify as abusive process, and he

8

references no subpoena actually issued or contempt proceeding actually held.

Because Butterman's alleged prevention of settlement did not directly result in interference with Hirsch's person or property beyond prolonging the ordinary burdens of defending a civil suit, it does not constitute "process."

**B.   Hirsch Does Not Allege Special Damages**

Hirsch's claim falters for a second, independent reason.  To state a claim for abuse of process, a plaintiff must allege special damages.  *See, e.g.*, *Stevens & Co.*, 2025 WL 950989, at *11; *Mitchell v. Cnty. of Nassau*, No. 05-cv-4957, 2007 WL 1580068, at *12 (E.D.N.Y. May 24, 2007), *adhered to on reconsideration*, No. CV-05-4957, 2008 WL 1803644 (E.D.N.Y. Apr. 17, 2008) (holding that plaintiff's abuse of process claim fails as a matter of law because of failure to plead special damages).

Special damages are "specific and measurable losses, . . . which must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts."  *Morea v. Saywitz*, No. 09-CV-3935, 2010 WL 475302, at *3 (E.D.N.Y. Feb. 8, 2010).  Round numbers and general allegations are insufficient.  *Kanciper v. Lato*, 989 F. Supp. 2d 216, 237 (E.D.N.Y. 2013).

Hirsch refers only to "unjustified legal fees" (the nature of which he does not specify) and "emotional distress"

9

before arriving at a requested award of "not less than $5,000,000." Compl. ¶ 66.  Hirsch's sole allegations of damages thus consist only of general allegations and round numbers.  He therefore has failed to allege special damages.

### III.     Conclusion

For the reasons set forth above, the motion to dismiss for failure to state a claim is granted with prejudice.[5]  A *pro se* litigant should generally be given at least one chance to replead.  *See Ganley v. City of New York*, 734 F. App'x 784, 786 (2d Cir. 2018).  Hirsch has had two such chances, including following a pre-motion conference on Butterman's motion to dismiss.  *See* ECF No. 6; Docket Order, Oct. 25, 2023.  Moreover, Butterman moved to dismiss the case with prejudice and Hirsch did not request leave to amend in his response.  *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41,55-56 (2d Cir. 2025) (dismissal without leave to amend appropriate when leave to amend requested only in a conclusory footnote and without identifying what changes would be made).  The Court declines to grant leave to amend *sua sponte*.  *Gallop v. Cheney,* 642 F.3d 364, 370 (2d Cir.

---

[5] Butterman additionally raises the affirmative defense of collateral estoppel, arguing this issue was decided during the divorce proceeding, but this defense is flawed.  In the divorce suit, Hirsch's cross-motion containing his allegations against Butterman was denied without prejudice "due to his default for failing to appear" in court.  Ex. D at 2, ECF No. 30-5.  Thus, the issue was never "actually litigated" for purposes of determining issue preclusion.  *Kaufman v. Eli Lilly & Co.,* 482 N.E.2d 63, 68 (N.Y. 1985).

10

2011) ("[N]o court can be said to have erred in failing to grant a request that was not made.").

This case shall be dismissed with prejudice and the Clerk of Court is respectfully directed to terminate the case.

SO ORDERED.

      /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    July 29, 2025
           Brooklyn, New York